**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA : | Docket No. 03-852 (MLC) |
| v. : | Return Date: July 5, 2005 |
| ATLANTIC STATES CAST IRON PIPE : COMPANY, A Division of McWane, Inc., JOHN PRISQUE, SCOTT FAUBERT, : JEFFREY MAURY, DANIEL YADZINSKI and CRAIG DAVIDSON, : | **Electronically Field** |
| Defendants. : | |

**BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS COUNTS 1, 8, 9 AND 10 FOR FAILURE TO PLEAD ESSENTIAL ELEMENTS OF THE OBSTRUCTION CHARGES**

| | |
|---|---|
| John J. O'Reilly, Esq.<br>Robert W. Ray, Esq.<br>Pitney Hardin LLP<br>P.O. Box 1945<br>Morristown, NJ 07962-1945<br>(973) 966-6300<br>Attorneys for Defendant Atlantic States Cast Iron Pipe Company | Thomas J. Kelly, Jr., Esq.<br>Venable LLP<br>575 7th Street, NW<br>Washington, DC 20004<br>(202) 344-4889<br>Attorneys for Defendant Atlantic States Cast Iron Pipe Company |
| Michael Critchley, Esq.<br>354 Main Street<br>West Orange NJ 07052<br>(973) 731-9831<br>Attorney for Defendant John Prisque | Michael D'Alessio, Jr., Esq.<br>80 Main Street<br>West Orange, NJ 07052<br>(973) 736-1500<br>Attorney for Defendant Scott Faubert |
| Michael Pedicini, Esq.<br>60 Washington Street<br>Morristown, NJ 07960<br>(973) 285-1555<br>Attorney for Defendant Jeffrey Maury | John C. Whipple, Esq.<br>264 South Street Building II<br>Morristown NJ 07960<br>(973) 455-9921<br>Attorney for Defendant Daniel Yadzinski |
| On the Brief:<br><br>Dana C. Nifosi, Esq. | Vincent J. Nuzzi, Esq.<br>Nuzzi & Mason LLC<br>50 Nelson Street<br>Dover, NJ 07801<br>(973) 335-7100<br>Attorney for Defendant Craig Davidson |

**PRELIMINARY STATEMENT**

The Government obtained a Superseding Indictment (the "Indictment") charging Atlantic States Cast Iron Pipe Company ("Atlantic States"), John Prisque, Scott Faubert, Jeffrey Maury, Craig Davidson and Daniel Yadzinski (collectively "Defendants") with various violations of federal criminal law.  Count 1 alleges that Defendants entered into a conspiracy, "no later than October 31, 1995", with five objectives, one of which was to obstruct a pending proceeding of the Occupational Safety and Health Administration ("OSHA") in violation of 18 U.S.C. §§ 1505 and 1515(b).  Counts 8, 9 and 10 also allege obstruction of a pending OSHA proceeding in violation of 18 U.S.C. §1505 ("Section 1505").  Count 11 alleges obstruction of an OSHA investigation in violation of 18 U.S.C. § 1519 ("Section 1519") rather than a pending proceeding under Section 1505.  At a hearing before this Court on January 14, 2005 regarding Defendants' Motion for a Bill of Particulars, the government represented that the "pending proceedings" of OSHA referenced throughout the Indictment are OSHA inspections of the facility.  Transcript of January 14, 2005 Hearing at 71-75.

Thirty-five of the eighty-one overt acts set forth in the conspiracy count involve allegations relating to OSHA inspections of the Atlantic States facility, most of which occurred following accidents.  *See, e.g.*, Overt Acts 34-38, 41-65, 67-71.  The earliest OSHA inspection referenced in the Indictment allegedly occurred between February 16, 1996 and March 1, 1996, after an employee fell off a rope ladder.  *See* Overt Acts 50-52.  All of the other OSHA inspections referenced in the conspiracy count occurred between 1999 and 2002.

All four of the substantive counts alleging obstruction of OSHA involved inspections that occurred in 1999 or later.  Count 8 alleges that Defendants Atlantic States and John Prisque violated Section 1505

> by instructing employee "B" to falsely inform the [OSHA] inspectors that the saw safety shield had not been changed since the June 24, 1999 incident in which an employee sustained a fractured skull and lost and eye when a saw blade broke apart, when in fact, a steel wire screen had been added to the shield after the incident.

This allegation also is the subject of Overt Acts 57 and 58 of Count 1.

Count 9 alleges that Defendants Atlantic States, John Prisque, Scott Faubert and Jeffery Maury violated Section 1505

> By taking steps to conceal facts regarding the forklift fatality on March 24, 2000 from [OSHA] inspectors.

Overt Acts 34 through 38 also make similar allegations regarding the same accident. Count 10 charges Defendants Atlantic States, John Prisque and Scott Faubert with violating Section 1505

> By instructing employee "A" to falsely inform [OSHA] inspectors that his leg had not been broken when he had been struck by a forklift on April 27, 1999.

Overt Acts 53 through 56 also relate to this accident.

Finally, Count 11 alleges that Defendants Atlantic States and John Prisque violated Section 1519

> By altering the condition of a cement mixer and concealing from the [OSHA] inspectors that they had bypassed a safety device designed to shut down the cement mixer when its doors were opened, which led to the amputation of three of an employee's fingers.

Overt Acts 67 through 71 also include allegations of obstruction regarding this accident, which occurred in December 2002. Because Congress enacted Section 1519 in July 2002, and Counts 8, 9 and 10 involved OSHA inspections relating to accidents that occurred in 1999 or 2000, these three counts could not be brought under Section 1519.

3

Count 1 of the Indictment must be dismissed, because regardless of whether or not an OSHA inspection or investigation actually is a "pending proceeding" under Section 1505, the Indictment contains no allegation that there was an OSHA inspection or investigation pending as of October 31, 1995. Nor does it allege that there was any reasonably foreseeable OSHA inspection or investigation as of October 31, 1995. Indeed, the first OSHA inspection referenced in the Indictment was in response to an accident at the facility in 1996, which, by definition, was not foreseeable at the time the Defendants allegedly entered the conspiracy to obstruct pending OSHA proceedings.

Counts 8, 9 and 10 also must be dismissed. Obstruction of justice under Section 1505 requires the existence of a "pending proceeding." Case law interpreting Section 1505, as well as Congress's enactment of Section 1519, make clear that an OSHA inspection following an accidental injury of an employee is not a "pending proceeding" before OSHA within the meaning of Section 1505. To find otherwise would allow any informal remark made to OSHA personnel during an inspection to serve as the basis for a charge of obstruction, defeating the paramount purpose of the OSH Act to improve worker safety. Moreover, Defendants' actions did not have a sufficient nexus to a pending proceeding, as required under *United States v. Aguilar*, 515 U.S. 593 (1995). As there was no OSHA proceeding pending when Defendants allegedly took the actions set forth in Counts 8, 9 and 10, they must be dismissed.

## ARGUMENT

### I. ESSENTIAL ELEMENTS OF A SECTION 1505 VIOLATION

It is a violation of Section 1505 to:

> corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of

>the law under which any pending proceeding is being had before
>any department or agency of the United States . . .

18 U.S.C. § 1505.  The crime of obstruction of a pending agency proceeding in violation of Section 1505 has three essential elements:  (1) there must be a pending proceeding before a department or agency of the United States; (2) the defendant must be aware of such a proceeding; and (3) the defendant must have intentionally endeavored corruptly to influence, obstruct or impede the pending proceeding.  In addition to these three elements, the Supreme Court has made clear that the government may not impose criminal liability for obstructing an agency proceeding unless the defendant's conduct has a sufficient "nexus" to the proceeding and is likely to actually obstruct it.  *Aguilar*, 515 U.S. at 599.

In contrast, Congress enacted 18 U.S.C. § 1519 as part of the Sarbanes-Oxley Act of 2002, Pub. L. 107-204, 116 Stat. 745, which was passed in the wake of the Enron scandal. Section 1519 imposes criminal penalties for destroying or altering documents or other evidence with the intent to obstruct an agency investigation.  Section 1519 provides in pertinent part:

>Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the *investigation* or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519 (emphasis added).  The legislative history makes clear that Section 1519 is more broad than other obstruction statutes, such as 18 U.S.C. § 1505, with respect to the types of agency activities that it covers.  Congressional intent was that the statute would not include "distinctions, which some courts have read into obstruction statutes, between court proceedings, investigations, regulatory or administrative proceedings (whether formal or not), and less formal

5

government inquiries, regardless of their title."  107th Cong. Rec. S 7418 (daily ed. July 26, 2002) (statement of Sen. Leahy).

## II. THERE WAS NO EXISTING OR FORESEEABLE OSHA PROCEEDING AT THE TIME DEFENDANTS ALLEGEDLY ENTERED INTO THE CONSPIRACY

In Count 1 of the Indictment the government alleges that Defendants entered into a conspiracy no later than October 31, 1995, and that one of the five objectives of the conspiracy was "[t]o corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede, the due and proper administration of law under which a pending proceeding is being had before OSHA, an agency of the United States", in violation of 18 U.S.C. §§ 1505 and 1515(b). As discussed in Section III, *infra*, Defendants dispute the government's assertion that the OSHA inspections or investigations referenced throughout the Indictment constitute "pending proceedings" within the meaning of Section 1505.  Even assuming that the government's position is correct, however, on its face the Indictment does not make any allegation that there actually was a pending or reasonably foreseeable pending proceeding at the time Defendants allegedly entered into the conspiracy on or before October 31, 1995.

The first alleged effort to obstruct an OSHA inspection referenced in Count 1, or anywhere in the Indictment, was between February 16 and March 1, 1996, in response to an accident in which an employee fell off a rope ladder in the cupola area.  Overt Acts 50-52.  There can be no argument that this inspection could not constitute an OSHA proceeding that was pending at the time Defendants entered into the conspiracy.

Although it is possible for there to be a conspiracy to obstruct justice in the absence of a pending proceeding, at the time the parties enter into the conspiracy they must have the intent to thwart a proceeding they expect or fear will be instituted.  *United States v. Nelson*, 852 F.2d 706,  715 (3d Cir.), *cert denied*, 488 U.S. 909 (1988); *United States v. Messerlian*, 832

F.2d 778, 794 (3d Cir. 1987), *cert. denied*, 485 U.S. 988 (1988); *United States v. Perlstein,* 126 F.2d 789, 796 (3d Cir.) *cert. denied*, 316 U.S. 1942).  In *Perlstein*, defendants were charged with a conspiracy to obstruct grand jury proceedings with respect to operation of an illegal still, although no proceedings were pending when the agreement was reached.  The Court upheld the conviction by making a distinction between the elements of a conspiracy to obstruct justice and those of the substantive obstruction statute.  Because the primary purpose of such a conspiracy is to prevent federal proceedings from ever taking place, the Court reasoned, the pending proceeding" requirement must not be strictly applied to a charge of conspiracy to obstruct justice.  *Perlstein*, 126 F.2d at 794.  A key factor of the Court's reasoning, however, was that at the time Defendants entered into the conspiracy to obstruct justice they expected or anticipated that a grand jury proceeding could be commenced.  *Id.* at 795.

Similarly, the Third Circuit upheld the convictions of two police officers in *United States v. Messerlian*, 832 F.2d 778 (3d Cir. 1987), for conspiring to obstruct justice in the absence of a pending proceeding.  The defendants assaulted an intoxicated arrestee, who died from his injuries, and then conspired to cover up the assault.  Defendants appealed their convictions, in part on the basis that they could not be charged with a conspiracy to obstruct federal proceedings that had not commenced at the time the alleged conspiracy was formed.  The Court upheld the conspiracy jury instruction containing the following language: "… it is sufficient for the government to prove that each defendant willfully participated in the lawful plan with the understanding that one of its objectives was, *or would foreseeably become the obstruction of a Federal grand jury investigation.*"  *Id.* at 793 (emphasis added).  The Court found that the jury was properly instructed to convict if the federal proceeding was foreseeable to the conspirators and that they willfully agreed to engage in activity that they knew and intended

7

would obstruct justice "in the anticipated federal proceeding should it actually commence in the future." *Id.* at 794. The Court concluded that a federal proceeding regarding the death of the arrestee in the defendants' custody was reasonably foreseeable, and therefore, that they could have conspired to obstruct such a proceeding before it commenced. *Messerlian*, 832 F.2d at 794.

In the instant case, however, Defendants had no reason in October 1995 to expect or fear an OSHA inspection in 1996 because the event giving rise to that inspection was an unforeseeable accident. It is logically impossible for multiple persons to agree to obstruct a future inspection resulting from events that had not occurred yet at the time of the agreement and could not be predicted. Thus, as a matter of law, there could be no conspiracy in 1995 to obstruct pending OSHA proceedings that did not commence until the following year.

As the government has drafted the conspiracy count of the Indictment, there is no way to know whether the grand jury would have indicted on the other objectives of the conspiracy – to violate the Clean Water Act or Clean Air Act, to make false statements, or to defraud the federal government – absent the conspiracy to obstruct a pending OSHA proceeding.

> To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure.

*Russell v. United States*, 369 U.S. 749, 770 (1962). The grand jury's intention with respect to the conspiracy count is impossible to discern. Moreover, the Court cannot fashion jury instructions to assure a unanimous verdict on the type of conspiracy charged. To allow Count 1 to stand, therefore, invites severe prejudice to the Defendants. Accordingly, Count 1 should be dismissed.

### III. THE OSHA INSPECTIONS REFERENCED IN COUNTS 8, 9 AND 10 DO NOT QUALITY AS "PENDING PROCEEDINGS" UNDER SECTION 1505

The bedrock element of Section 1505 is that there must be a "pending proceeding . . . before any department or agency of the United States." *United States v. Price*, 951 F.2d 1028, 1031 (9th Cir. 1991). What constitutes a "pending proceeding" is a question of law. *United States v. Leo*, 941 F.2d 181, 198 (3d Cir. 1991).

Counts 8, 9, and 10 of the Indictment are fatally flawed because the referenced OSHA inspections do not constitute "pending proceedings". These three counts involve alleged misrepresentations made in preparation for three follow-up inspections by OSHA after accidents that occurred at the Atlantic States facility, which fall outside the proper bounds of a "pending proceeding" under Section 1505.

#### A. What Constitutes A "Pending Proceeding"

Although agency investigations have been interpreted by some circuits as agency proceedings under Section 1505, courts in those instances have required that there be, at the very least, an enforcement action or a formal investigation. *See United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir 1994) (investigation by Inspector General was proceeding under Section 1505); *United States v. Schwartz*, 924 F.2d 410, 423 (2d. Cir. 1991) (Customs Service investigation in an airport was proceeding). *See also United States v. Vixie*, 532 F.2d 1277, 1278 (9th Cir. 1976); *United States v. Sutton*, 732 F.2d 1483, 1490 (10th Cir. 1984), *cert. denied*, 469 U.S. 1157 (1985).

The Third Circuit adopted a similar interpretation in *United States v. Leo*. There, the Court held that a Defense Contract Audit Agency's audit was a "pending proceeding" under Section 1505 because the audit agency's investigation was "crucial in [the Defense] Department['s] proceedings for the discovery of fraud." *Leo*, 941 F.2d at 199. The Court noted,

based on the Agency's regulations, that the Department of Defense relies on its auditing services "in connection with negotiation, administration and settlement of contracts and subcontracts." *Id*. (citation omitted). Thus, because the Agency's purpose primarily was directed at aiding the Department of Defense in procuring and monitoring contract relationships, the Court found that the Agency audit was "crucial in [Department of Defense] proceedings for the discovery of fraud." *Id*.

More recently, however, the Third Circuit has construed the scope of a "pending proceeding" more narrowly. In *United States v. Davis*, the Court noted that in regard to Section 1503,[1] "[c]ourts have repeatedly held that an investigation simpliciter is not enough to trigger § 1503". 183 F.3d 231, 390 (3d Cir. 1999). Quoting *Perlstein*, discussed *supra*, the court explained:

> Investigation by agents of the Treasury Department 'or some other like instrumentality' of the United States does not constitute a pending proceeding. United States v. Perlstein, 126 F.2d 789, 792 (3d Cir. 1942)[.]

*Id*..[2]

---

[1] Of the obstruction statutes, 18 U.S.C. § 1503 is the most similar to Section 1505. *Tarzan v. United States*, 266 F.2d 561, 562 (8th Cir. 1959) ("[i]n general § 1505 serves a purpose in the administrative field similar to that of §[] 1503 . . . in the judicial field."). Courts frequently look to Section 1503 precedent in construing what types of agency action qualifies as a "pending proceeding" under Section 1505. *See United States v. Mitchell*, 877 F.2d 294, 299 n.4 (4th Cir. 1989).

[2] The Ninth Circuit also has issued recent opinions supporting a narrow construction of the "pending proceeding" requirement. In *United States v. Technic Services, Inc.*, 314 F.3d 1031, 1044 (9th Cir. 2002), the defendant was charged, *inter alia*, with obstruction of justice because during an EPA and Department of Labor investigation he allegedly solicited employees to sign false statements indicating that while removing asbestos, the company did not wrongfully release wastewater into the local bay. The Ninth Circuit affirmed a defendant's conviction under Section 1505 because "the record show[ed] that [the Defendants'] conduct, while removing the asbestos at the pulp mill, was under investigation by the EPA at the relevant time." *Id*. at 1044. Additionally, in *United States v. Kim*, Nos. 03-10043, 03-10090, 2004 LEXIS 6566, at *9 (9th Cir. April 5, 2004), the district court held that a telephone interview the defendant gave to a Securities and Exchange Commission ("SEC") investigator did not satisfy the pending proceeding requirement of Section 1505 because it "was merely an informal inquiry, made before the SEC issued its formal order of authority authorizing subpoena power[.]" *Id*. Thus, "there was no 'pending proceeding' when the Agent phoned [the defendant]." *Id*. The Ninth Circuit, however, ultimately did not decide whether the telephone interview was a pending proceeding because it found that the defendant lacked sufficient intent.

**B.     The OSHA Inspections At Atlantic States Were Not "Pending Proceedings"**

The Third Circuit's reasoning in *Leo* hinges on the fact that the DCAA inspections were critical to the Defense Department's proceedings for the discovery of fraud.  The purpose and function of the OSHA inspections that occurred after the accidents referenced in Counts 8, 9 and 10 of the Indictment, however, are distinctly different.

The paramount purpose of the OSH Act, 29 U.S.C. § 651, *et seq.*, is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources".  29 U.S.C. § 651(b).  To that end, OSHA has statutory authority to

> inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.

*Id.* § 657(a)(2).  As explained in the OSHA Field Inspection Reference Manual (FIRM) CPL 2.103 (September 30, 1994), inspections are "programmed" or "unprogrammed".  Programmed inspections are routinely scheduled according to national scheduling plans.  Unprogrammed inspections are conducted in response to alleged hazardous working conditions.  This type of inspection responds to reports of fatalities/catastrophes, imminent dangers, employee complaints (received prior to inspection) and referrals.  Accidents involving significant publicity or any other accident not involving a fatality or catastrophe, however reported, may be considered as either a complaint or a referral. FIRM, Chapter I.B.2.

The purpose of an OSHA inspection that occurs after an accident that kills or injures an employee, like those accidents that are the subject of Counts 8, 9 and 10, is to determine whether operations, conditions or practices at the facility caused the accident, and if

11

so, whether the facility can take abatement action to prevent such accidents in the future. OSHA has authority to issue subpoenas for documents or testimony or to obtain warrants in conjunction with inspections or investigations. OSHA did issue a subpoena in conjunction with the forklift accident that is the subject of Count 9, but not until July 21, 2000 – four months after the alleged activities that the government claims constituted obstruction of agency proceedings. No subpoenas were issued in relation to the inspections after the accidents that are the subject of Counts 8 and 10.

Inspections or more in-depth investigations may result in the issuance of a citation setting forth violations of OSHA standards and any actions that must be taken to abate the violation, as well as a penalty for the violation. 29 U.S.C. §§ 658, 666.[3] The penalty structure, however, "is designed primarily to provide an incentive toward correcting violations voluntarily", and penalties are "not designed primarily as punishment for violations". FIRM, Chapter IV-7.

Thus, the thrust of an OSHA accident inspection is to identify and remediate hazardous conditions at a facility to prevent similar accidents in the future. The primary goal is not to punish the employers. No court has interpreted "pending proceeding" under Section 1505 to include inspections of this sort, and to do so would mean that any statements made during an OSHA inspection by an employee that the government claims to be false or misleading could be charged as an obstruction of justice under Section 1505. This result would turn both the OSH Act and Section 1505 on their heads.

---

[3] The employer has fifteen days from receipt of the citation and/or proposed penalty to notify OSHA of whether it will contest the citation or penalty. *Id.* § 659(a). An employee or representative of employees also may file a notice with OSHA in response to a proposed citation alleging that the time period set in the citation for abatement of the violation is unreasonable. *Id.* § 659(c). If an employer or employee files such notice, the Occupational Safety and Health Commission must provide an opportunity for a hearing and issue an order affirming, modifying or vacating the citation or proposed penalty, or directing other appropriate relief. *Id.*

The government knows that it is a broad leap to conclude that these OSHA inspections are "pending proceedings" under Section 1505.  That is why Count 11, which also alleges obstruction of justice, is charged under 18 U.S.C. § 1519 rather than Section 1505.  Section 1519 makes it a crime to alter or destroy documents or tangible objects with the intent to obstruct an agency "investigation".

Count 11 relates to an OSHA inspection following an accident that occurred in December 2002, a few months after Congress enacted Section 1519.  The inspection that occurred after that accident was functionally equivalent to the inspections that are the subject of Counts 8, 9 and 10.  The allegation in Count 11 of tampering with machinery after the accident also is similar to the allegations relating to Counts 8 and 9 that various Defendants altered machinery involved in the accidents.  *See* Overt Acts 34-38, 57-58, Counts 8-9.  Yet the government charged Count 11 under Section 1519 rather than Section 1505.

While the legislative history of Section 1519 is not indicative of Congress's intent when it enacted Section 1505, *Leo*, 941 F.2d at 198, it demonstrates the awareness of Congress that new legislation was necessary to cover agency investigations because courts have not construed "pending proceedings" under obstruction statutes like Section 1503 and 1505 as including agency investigations.  As explained by Senator Leahy when the statute was passed, Section 1519 "is specifically meant not to include any technical requirement, which some courts have read into other obstruction of justice statutes, to tie the obstructive conduct to a pending or imminent proceeding or matter by intent or otherwise."  107th Cong. Rec. S 7418 (daily ed. July 26, 2002).

Thus, Congress recognized the need for Section 1519 due to judicial interpretations that agency investigations do not constitute "pending proceedings."  Counts 8, 9,

13

and 10, therefore, should be dismissed because the OSHA inspections at issue do not constitute pending proceedings as a matter of law.

### IV.  DEFENDANTS' ACTIONS DID NOT HAVE THE NATURAL AND PROBABLY EFFECT OF INTERFERING WITH A PROCEEDING

Even if this Court finds that OSHA inspections that occurred at the Atlantic States facility are "pending proceedings" under Section 1505, Counts 8, 9, and 10 of the Indictment still must be dismissed because the Defendants' actions did not have the natural and probable effect of interfering with the pending proceeding.

Section 1505 is one among many statutes in Title 18 proscribing conduct that amounts to an "obstruction of justice." Several of these statutes, including Section 1505, explicitly require that a defendant obstruct or endeavor to obstruct a "proceeding." *See* 18 U.S.C. §§ 1512 (a), (b) ("official proceeding").[4] 18 U.S.C. § 1503 ("Section 1503") is the obstruction statute most similar to Section 1505. In relevant part, Section 1503 provides criminal sanctions for anyone who "corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes or endeavors to influence, obstruct, or impede, the due administration of justice . . ." 18 U.S.C. § 1503.

Section 1505 sanctions the same obstructive conduct as Section 1503, except that Section 1505 prohibits the obstruction of agency proceedings while Section 1503 prohibits obstruction of judicial proceedings. Both sections use the word "endeavor" to signal an intent requirement, and while both statutes require a pending proceeding, Section 1505 is explicit in its statutory language. Accordingly, Courts have looked to Section 1503 precedent in construing

---

[4] In contrast, other statutes in Title 18 expressly disclaim the requirement of a pending proceeding. *See* 18 U.S.C. § 1512(f)(1) ("an official proceeding need not be pending"). Several other statutes that lack specific language on this matter, such as 18 U.S.C. § 1503, uniformly have been construed by courts to require a pending proceeding. *See*, *e.g., United States v. Aguilar*, 515 U.S. 593, 599 (1995). *See also United States v. Schwarz*, 283 F.3d 76 (2d Cir. 2002); *United States v. Vahela*, 169 F.3d 729, 733 (11th Cir. 1999); *United States v. Muillins*, 22 F.3d 1365, 1370 (6th Cir. 1994); *United States v. Van Engel*, 15 F.3d 623, 627 (7th Cir. 1993), *cert. denied*, 511 U.S. 1442 (1994); *United States v. Williams*, 874 F.2d 968, 977 (5th Cir. 1989); *United States v. Brown*, 668 F.2d , 598 (9th Cir. 1982).

what types of agency action qualifies as a "pending proceeding" under Section 1505. *See United States v. Mitchell*, 877 F.2d 294, 299 n.4 (4th Cir. 1989) (agreeing with other circuits "that the identity of purpose among these provisions makes case law interpreting any one of these provisions strongly persuasive authority in interpreting the others"); *United States v. Laurins*, 857 F.2d 529, 536 (9th Cir. 1988), *cert. denied*, 429 U.S. 906 (1989) (reasoning that "cases interpreting section 1503 are relevant to constructions of section 1505").[5]

Resolving a split in the Circuits, the Supreme Court in *United States v. Aguilar* clarified the "pending proceeding" requirement in Section 1503 by establishing that the government must show a "natural and probable" relationship, or nexus, between a defendant's obstructive behavior and an actual judicial proceeding. 515 U.S. 593, 599 (1995). In *Aguilar*, a federal judge who had warned a nephew of a federal wiretap subsequently was questioned by the FBI during a grand jury investigation of a "conspiracy to influence the outcome of . . . a habeas case." *Id.* at 596-97. When questioned, Judge Aguilar made false statements to the FBI agents indicating that he had not warned his nephew of the wiretapping. The government charged the judge with obstruction of justice under Section 1503.

The Supreme Court affirmed the dismissal of the charge. It explained that Aguilar's case did not satisfy the "nexus" requirement because:

> We do not believe that uttering false statements to an investigating agent – and that seems to be all that was proved here – who might or might not testify before a grand jury is sufficient to make out a violation of § 1503.

---

[5] It is generally accepted that because the language of the Omnibus Clauses of 1505 and 1503 are substantially identical, case law interpreting one section is relevant in assessing the other. *See* Jeffery Kallstom, *Obstruction of Justice*, 30 AM. CRIM. L. REV. 1081, 1103-04 (2001) (characterizing 18 U.S.C. § 1503 and 18 U.S.C. §1505 as companion statutes).

*Id*. at 600.  The Court, therefore, distinguished between statements made during an investigation and statements made to influence a grand jury.  This distinction naturally follows from language that the Court favorably cited from the Ninth Circuit earlier in its opinion:

> The action taken by the accused must be with the intent to influence judicial or grand jury proceedings; it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the court's jury authority.

*Id*. at 599 (*quoting United States v. Brown*, 688 F.2d 596 (9th Cir. 1982)).

Since *Aguilar*, courts interpreting Section 1505 consistently have held that *Aguilar* applies not only to Section 1503, but also to Section 1505.  *See* United *States v. Senffner*, 280 F.3d 755, 762 (7th Cir.), *cert. denied*, 536 U.S. 934 (2002) (government must show a "natural and probable" effect of interfering with an SEC proceeding); *United States v. Hopper*, 177 F.3d 824, 831 (9th Cir. 1999) (defendant's action had the "natural and probable" effect of obstructing an IRS proceeding).  Recently, the Third Circuit articulated the *Aguilar* nexus requirement in *United States v. Cohen*, 301 F.3d 152, 158 (3d Cir. 2002).  In that case, defendant Cohen, a secret service agent, was indicted on charges stemming from his theft of $2,800 taken in various seizures.  On two occasions, Cohen misrepresented the amount of money seized on invoice reports and allegedly kept it.  Furthermore, he allegedly instructed a fellow agent to lie to other investigating agents about it.  Cohen was convicted, *inter alia*, of two counts of obstruction of justice in violation of Section 1503 relating to each of the two instances in which he misrepresented the amount of money seized.

On appeal Cohen challenged his conviction for one of the obstruction counts.  The Third Circuit reversed the conviction on that count, finding that the government did not prove that the defendant had "the intent of influencing, obstructing, or impeding the proceeding" and

16

that his actions "had the 'natural and probable effect' of interfering with the due administration of justice." *Id.* at 157.

Judge Aguilar, who lied to FBI agents who had specifically advised him that a grand jury investigation had been commenced, was not liable for obstructing that investigation. *Aguilar*, 515 U.S. at 600. Cohen, who stole money from police seizures, lied in signing documents which misrepresented the amount seized and instructed another agent to lie to investigating agents, was not criminally liable for obstructing those investigations. In comparison, the Indictment in the instant case plainly fails to state an obstruction charge against Atlantic States.

In Counts 8 and 10, the Defendants' alleged conduct consists of instructing an employee to give false statements to OSHA inspectors during inspections following employee accidents. In Count 9, the Defendants allegedly fixed a forklift before an OSHA inspector could examine it. The Indictment fails to allege that the conduct set forth in counts 8, 9, and 10 have the natural and probable effect of interfering with a pending proceeding.

## V. THE INDICTMENT FAILS TO ALLEGE THAT DEFENDANTS WERE AWARE OF A "PENDING PROCEEDING"

Even if this Court finds that there existed a "pending proceeding" under Section 1505, and that the Defendants' actions had the natural and probable effect of interfering with the due administration of justice, Counts 8, 9, and 10 of the Indictment are deficient because they fail to allege that the Defendants were aware of a "pending proceeding" under 18 U.S.C. § 1505. The Defendants cannot be held criminally liable under Section 1505 unless they: (i) were aware that the inspection constituted a pending OSHA proceeding and (ii) "intentionally endeavored corruptly to influence, obstruct or impede [that] . . . proceeding." *Price*, 951 F.2d at 1031.

17

With respect to Counts 8, 9 and 10 nothing in the Indictment supports the conclusion that, at the time Defendants allegedly instructed employees to provide false statements or tamper with equipment, they knew the OSHA inspections were pending proceedings. In a number of cases the Third Circuit has made clear that in order to violate the similarly situated obstruction statute Section 1503, "a defendant must have notice or knowledge of the pendency of some Judicial proceeding constituting the administration of justice." *Cohen*, 301 F.3d at 157 (citation omitted). *See Davis*, 183 F.3d at 239; *Unites States v. Nelson*, 852 F.2d 706, 710 (3d Cir. 1988). In this case, because the inspections were couched as typical inspection following accidents at the facility, the Defendants had no notice of any pending proceeding. Subsequently, any conduct or statements made in preparation for these inspections cannot have violated Section 1505.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully requests that this Court dismiss Counts 1, 8, 9 and 10.

/S/_____
John J. O'Reilly, Esq.
Robert W. Ray, Esq.
Pitney Hardin LLP
Attorneys for Defendant Atlantic States Cast Iron Pipe Company

/S/_____
Thomas J. Kelly, Esq.
Venable LLP
Attorneys for Defendant Atlantic States Cast Iron Pipe Company

/S/_____
Michael Critchley, Esq.
Attorney for Defendant John Prisque

/S/_____
Michael D'Alessio, Jr., Esq.
Attorney for Defendant Scott Faubert

/S/_____
Michael Pedicini, Esq.
Attorney for Defendant Jeffrey Maury

/S/_____
John C. Whipple, Esq.
Attorney for Defendant Daniel Yadzinski

/S/_____
Vincent J. Nuzzi, Esq.
Nuzzi & Mason LLC
Attorneys for Defendant Craig Davidson

Dated:  March 18, 2005